

**IN THE UNITED STATES BANKRUPCTY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
11/25/2013

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **QUALITY INFUSION CARE, INC.,** | § | **CASE NO. 10-36675** |
| | § | **Chapter 7** |
| Debtor. | § | |
| | § | |
| | § | |
| **RANDY W. WILLIAMS,** | § | |
| **CHAPTER 7 TRUSTEE,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | **ADVERSARY NO. 13-3056** |
| | § | |
| **MCKESSON CORPORATION,** | § | |
| Defendant. | § | |

**MEMORANDUM OPINION REGARDING: (1) TRUSTEE'S MOTION FOR**
**SUMMARY JUDGMENT; AND (2) MCKESSON CORPORATION'S**
**MOTION FOR SUMMARY JUDGMENT**
[Related to Adv. Doc. Nos. 20 & 21]

**I. INTRODUCTION**

The Court issues this Memorandum Opinion for two reasons: (1) to emphasize to the practicing bankruptcy bar that in seeking to avoid and recover preferential payments, the element required to be satisfied under 11 U.S.C. § 547(b)(5)[1] requires satisfying the so-called Application Aspect and Source Aspect when the defendant asserts that it is an undersecured creditor; and (2) to set forth this Court's disagreement with the Ninth Circuit's holding that to satisfy the implicit requirement of § 547(b)(5)—which is typically referred to the "diminution of the estate" test— the plaintiff must show that the alleged preferential transfer "diminishes directly or indirectly the funds to which creditors of the same class can legally resort for the payment of their debts, to

---

[1] Any reference to "the Code" refers to the United States Bankruptcy Code, and reference to any section (i.e., §) refers to a section in 11 U.S.C., which is the United States Bankruptcy Code, unless otherwise noted. Further, any reference to "the Bankruptcy Rules" refers to the Federal Rules of Bankruptcy Procedure.

such an extent that it is impossible for other creditors of the same class to obtain as great a percentage as the favored one." *Adams v. Anderson (In re Superior Stamp & Coin Co.)*, 223 F.3d 1004, 1007 (9th Cir. 2000). This Court concludes that the implicit requirement of § 547(b)(5) requires only that the plaintiff prove that the property which was transferred would have become "property of the estate" upon the filing of the bankruptcy petition if no transfer had occurred.

## II. Procedural and Factual Background

Quality Infusion Care, Inc. (the Debtor) began purchasing drugs and medical supplies from McKesson Corporation (McKesson) on an open account in or around August 2008. [Adv. Doc. No. 20, p. 4, ¶ 10]. On November 28, 2009, McKesson filed suit against the Debtor and two of its principals, James R. Rutherford and Linda Rutherford, in the 193rd Judicial District Court of Dallas County, Texas, and this suit was assigned Case No. 09-16188 (the State Court Lawsuit). [Adv. Doc. No. 21-1, p. 6]. In the State Court Lawsuit, McKesson sought to recover $1,208,855.66 in indebtedness owed by the Debtor on an open account. [Adv. Doc. No. 21, p. 4, ¶ 8]. On February 2, 2010, the parties in the State Court Lawsuit entered into a Settlement Agreement and Release (the Settlement Agreement), which fully and finally resolved the State Court Lawsuit. [Adv. Doc. No. 21-1, pp. 6–10]. Pursuant to the terms of the Settlement Agreement, the Debtor agreed to deliver to McKesson an immediate payment of $57,500.00 and a promissory note in the principal amount of $1,197,567.56.[2] [*Id.* at pp. 6 & 12–18]. From June 1, 2010 to August 3, 2010, the Debtor made the following payments to McKesson pursuant to the Settlement Agreement: (i) $43,341.10 on June 1, 2010; (ii) $13,806.55 on June 1, 2010; (iii) $42,911.46 on July 1, 2010; (iv) $13,669.73 on July 1, 2010; (v) $42,659.17 on August 3, 2010;

---

[2] It is undisputed that McKesson has a properly perfected security interest in several assets of the Debtor, including accounts receivables. *See* [Adv. Doc. No. 21-1, p. 15].

2

and (vi) $13,589.36 on August 3, 2010—for a total of $169,997.37 (the Transfers).  [Adv. Doc. No. 20, p. 5, ¶ 16; Adv. Doc. No. 20-3].

The Debtor filed a voluntary Chapter 11 petition on August 3, 2010 (the Petition Date). [Main Case Doc. No. 1].  On January 21, 2011, the Chapter 11 case was converted to a Chapter 7 case.  [Main Case Doc. No. 348].  On March 8, 2013, Randy W. Williams, the plaintiff in the above-referenced adversary proceeding and the Chapter 7 Trustee (the Trustee), filed his complaint against McKesson, seeking to avoid and recover the Transfers that he alleges were preferential, pursuant to §§ 547 and 550 (the Complaint).  [Adv. Doc. No. 1].  On April 15, 2013, McKesson filed its answer to the Complaint (the Answer), admitting that it received the Transfers on or within 90 days before the Petition Date, but asserting that the Transfers are not avoidable preferences.  [Adv. Doc. No. 11].  In the Answer, McKesson asserted the "ordinary course of business" defense pursuant to § 547(c)(2) and the "new value" defense pursuant to § 547(c)(4).[3]  [*Id.* at p. 4, ¶¶ 4–5].

On September 4, 2013, the Trustee filed the Trustee's Motion for Summary Judgment against McKesson Corporation (the Trustee's Motion), seeking: (1) to avoid six payments totaling $169,977.37 made to McKesson pursuant to § 547(b) (the Preference Claim); (2) to recover $169,977.37, plus pre- and post-judgment interest pursuant to § 550 (the Recovery Claim); and (3) summary judgment as a matter of law on McKesson's  ordinary course of business defense under § 547(c)(2).  [Adv. Doc. No. 20].  McKesson filed a response opposing the Trustee's Motion on October 4, 2013 (McKesson's Response).  [Adv. Doc. No. 24].  On September 4, 2013, McKesson filed McKesson Corporation's Motion for Summary Judgment against the Trustee (McKesson's Motion), seeking summary judgment in its favor on the

---

[3] At a hearing held on November 21, 2013, counsel for McKesson announced that McKesson no longer asserts the "new value" defense.

Preference Claim. [Adv. Doc. No. 21]. The Trustee filed a response opposing McKesson's

Motion on October 4, 2013 (the Trustee's Response). [Adv. Doc. No. 23].

The Court has now reviewed the competing motions for summary judgment and

responses thereto. For the reasons set forth below, this Court concludes that there are certain

genuine issues of material fact for trial with respect to the Preference Claim. Accordingly, this

Court finds that: (1) the Trustee's Motion should be granted in part as to McKesson's "ordinary

course of business" defense; (2) the Trustee's Motion should be denied in part as to the

Preference Claim and the Recovery Claim; and (3) McKesson's Motion should be denied in its

entirety.

### III. CONCLUSIONS OF LAW

**A.      Jurisdiction, Venue, and Constitutional Authority to Enter a Final Order**

1. <u>Jurisdiction</u>

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C.

§§ 1334(b) and 157(a). This particular dispute is a core proceeding pursuant to 28 U.S.C.

§§ 157(b)(2)(A), (F), and (O), and the general "catch-all" language of 28 U.S.C. § 157(b)(2).

*See Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 930 (5th

Cir. 1999) ("[A] proceeding is core under section 157 if it invokes a substantive right provided

by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a

bankruptcy case."). Indeed, this proceeding is uniquely core because a preference action only

arises under the Code. *See Country Junction, Inc. v. Levi Strauss & Co. (In re Country Junction,

Inc.)*, 41 B.R. 425, 429 (W.D. Tex. 1984) ("An action to recover a preference arises solely under

the federal bankruptcy laws and cannot be brought in the absence of a petition in bankruptcy."),

*aff'd sub nom. Country Junction v. Levi Strauss*, 798 F.2d 1410 (5th Cir. 1986).

2. <u>Venue</u>

Venue is proper pursuant to 28 U.S.C. § 1409(a).

3. <u>Constitutional Authority to Enter a Final Order</u>

The Supreme Court's decision in *Stern v. Marshall* recognized certain limitations on bankruptcy courts' authority to enter a final order. *Stern v. Marshall*, 131 S. Ct. 2594 (2011). Here, however, there is no need for *Stern* concern because granting in part and denying in part the Trustee's Motion and denying McKesson's Motion does not end the litigation on the merits; therefore, there is no final order to be entered at this time. *See, e.g., Truong v. Kartzman (In re Truong)*, 513 F.3d 91, 94 (3d Cir. 2008) ("[A]n order in an individual adversary proceeding is not final unless it ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment.") (internal quotation marks omitted); *Anchor Hocking v. Willamette Indus., Inc. (In re Corrugated Container Antitrust Litig.)*, 694 F.2d 1041, 1042 (5th Cir. 1983) ("The denial of a summary judgment motion is not a final order, it determines only that the movant is not entitled to judgment as a matter of law and that there are triable issues of fact to be resolved.").

Moreover, courts have held that because preference actions are "so closely integrated into the public bankruptcy scheme," *Stern* is not applicable to these types of claims. *W. v. Freedom Med., Inc. (In re Apex Long Term Acute Care—Katy, L.P.)*, 465 B.R. 452, 468 (Bankr. S.D. Tex. 2011). Because preference actions "stem from the bankruptcy itself and are decided primarily pursuant to [a bankruptcy court's] *in rem* jurisdiction," bankruptcy courts have constitutional authority to enter a final judgment in an adversary proceeding involving preferential transfer claims. *Post-Confirmation Comm. v. Tomball Forest, Ltd. (In re Bison Bldg. Holdings, Inc.)*, 473 B.R. 168, 172 (Bankr. S.D. Tex. 2012).   Accordingly, for these reasons, the Court's

5

issuance of an order granting in part and denying in part the Trustee's Motion and denying McKesson's Motion does not implicate *Stern*.

**B.      Summary Judgment Standard**

Federal Rule of Civil Procedure 56, made applicable to this adversary proceeding by Bankruptcy Rule 7056, provides that a court may grant summary judgment only if there is "no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Wash. v. Allstate Ins. Co.*, 901 F.2d 1281, 1286 (5th Cir. 1990) (internal quotation marks omitted).  A genuine issue of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008); *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).  "Summary judgment procedure is designed to isolate and dispose of factually unsupported claims or defenses." *Goodman v. Ferro Mgmt., Inc. (In re Gulf Fleet Holdings, Inc.*, Bankr. No. 10-50713, 2013 WL 3230433, at *2 (Bankr. W.D. La. June 25, 2013) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

In reviewing the evidence, "the Court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  "The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial." *Levine v. Blake (In re Blake)*, 401 B.R. 839, 843 (Bankr. S.D. Tex. 2009).

1. Movant Bears the Ultimate Burden of Proof at Trial

If the movant bears the ultimate burden of proof at trial "on a claim or defense addressed in the motion for summary judgment, then the movant must establish that there is no genuine

6

dispute of material fact as to those claims or defenses." *In re Gulf Fleet Holdings, Inc.*, 2013 WL 3230433, at *2. "If the moving party fails to meet this burden, the motion must be denied, regardless of the nonmovant's response." *Tubacex, Inc. v. M/V Risan*, 45 F.3d. 951, 954 (5th Cir. 1995). However, if the moving party does meet this burden, then the non-moving party must then "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Id.* If the non-moving party "fails to meet this burden, then summary judgment is appropriate." *Id.*

2. Non-moving Party Bears the Ultimate Burden of Proof at Trial

If the movant does not bear the ultimate burden of proof at trial with respect to an issue addressed in the motion for summary judgment, the movant:

> may satisfy its initial burden by either (1) demonstrating affirmatively that there is no triable of fact as to each element of the non-moving party's affirmative defenses or claims, or (2) "showing that the non-moving party cannot present evidence sufficient to satisfy the essential elements of its defenses or claims and thus cannot meet its burden of persuasion at trial.

*In re Gulf Fleet Holdings, Inc.*, 2013 WL 3230433, at *2 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–26 (1986)); *see also In re Blake*, 401 B.R. at 843 ("If the movant does not bear the burden of proof, the movant must show the absence of sufficient evidence to support an essential element of the opposing party's claim."). If the movant shows that there is no evidence to support the non-moving party's claims or defenses, the non-moving party "must come forward with 'substantial' evidence showing a genuine dispute of material fact with respect to each essential element of its affirmative defenses or claims." *In re Gulf Fleet Holdings, Inc.*, 2013 WL 3230433, at *2.

7

### 3. Cross-Motions for Summary Judgment

When faced with cross-motions for summary judgment, the Court must consider the motions separately because "each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Shaw Constructors v. ICF Kaiser Eng'r, Inc.*, 395 F.3d 533, 538–39 (5th Cir. 2004); *see also Schwabenbauer v. Bd. of Ed. of City Sch. Dist. of City of Olean*, 667 F.2d 305, 314 (2d Cir. 1981) ("[T]he court must evaluate each party's motion on its merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration."); *Velasquez-Campuzano v. Marfa Nat'l Bank*, 896 F. Supp. 1415, 1419 (W.D. Tex. 1995) (holding that cross-motions for summary judgment must be considered independently), *aff'd*, 91 F.3d 139 (5th Cir. 1996). Therefore, the Court considers the Trustee's Motion and McKesson's Motion separately.

## C.    The Trustee's Motion

The Trustee has the burden of persuasion at trial with respect to each of the elements of a preference claim under § 547(b).[4]  Accordingly, in order to prevail on summary judgment, the Trustee, as the movant, must establish that there is no genuine issue of material fact with respect to each element of the Preference Claim. *See In re Gulf Fleet Holdings, Inc.*, Bankr. No. 10-50713, 2013 WL 3230433, at *2 (Bankr. W.D. La. June 25, 2013).

Section 547(b) provides that the Trustee may avoid any transfer of an interest of the Debtor in property:

  (1) to or for the benefit of a creditor;
  (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
  (3) made while the debtor was insolvent;
  (4) made—
       (A) on or within 90 days before the date of the filing of the petition; or
       (B) between ninety days and one year before the date of the filing of the

---

[4] *See* 11 U.S.C. § 547(g); *Warsco v. Preferred Technical Grp.*, 258 F.3d 557, 564 (7th Cir. 2001).

8

petition, if such creditor at the time of such transfer was an insider; and
(5) that enables such creditor to receive more than such creditor would receive
if—
(A) the case were a case under chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the
provisions of this title.

11 U.S.C. § 547(b).

The Court finds that there are no material facts in dispute as to the first four elements of § 547(b), but finds that there are material facts in dispute as to the last element. Thus, this Court cannot grant summary judgment on the Preference Claim. *See, e.g., In re Gulf Fleet Holdings, Inc.*, 2013 WL 3230433, at *2.

1. The Trustee has Established that There is No Genuine Issue of Material Fact with Respect to the First Four Elements of the Preference Claim

In analyzing whether the first four elements under § 547(b) are satisfied, this Court must focus on the time the Transfers were made—specifically, June 1, 2010, July 1, 2010, and August 3, 2010 [Adv. Doc. No. 20, p. 5, ¶ 16; Adv. Doc. No. 20-3]. *See 5 Collier on Bankruptcy*, ¶ 547.03[7] at 547-40 (16th ed. 2013) ("All other elements of a preference in paragraphs (1) through (4) of section 547(b) are determined at the time the transfer is made.").

a.  *The Trustee has established that there is no genuine issue of material fact with respect to the first element of the Preference Claim*

The Court finds that the Trustee, has established that there is no genuine issue of material fact with respect to the first element of the Preference Claim. Attached to the Trustee's Motion as Exhibit 2 are "copies of bank statements from the Debtor's general operating account at Green Bank ending in #0187, which show ACH payments to McKesson corresponding to the Transfers." [Adv. Doc. No. 20-1, p. 1, ¶ 3; *see* Adv. Doc. No. 20-3, pp. 2, 4 & 6]. The Trustee has presented prima facie evidence that the Transfers are transfers of "interests of the Debtor in

9

property." *See Official Comm. of Unsecured Creditors v. Columbia Forest Prods., Inc. (In re Hardwood P-G, Inc.)*, Bankr. No. 06–50057–LMC, Adv. No. 06–5278–LMC, 2007 WL 1728653, at *2 (Bankr. W.D. Tex. June 12, 2007) (holding that transfers "by either wire transfer from the [d]ebtors' bank account or by check from the same account is prima facie evidence that the transfers are transfers of interests of the debtor in property"). Because the Trustee has made a prima facie showing, to avoid summary judgment, McKesson has the burden to point to "some evidence in the summary judgment record indicating that, in fact, the transfers in question were not of interests of the debtor in property." *Id.* This, McKesson fails to do.[5] Therefore, the Court finds that the six ACH payments reflected on the Debtor's June 30, 2010, July 30, 2010, and August 31, 2010 bank statements (i.e., the Transfers) constituted transfers of "interests of the Debtor in property."

Further, it is undisputed that the Transfers were made to McKesson pursuant to the Settlement Agreement [Adv. Doc. No. 1, p. 3, ¶ 14; Adv. Doc. No. 11, p. 2, ¶ 14], and thus, McKesson is a creditor of the Debtor. In sum, the Court finds that the Transfers constitute transfers of "interests of the Debtor in property" made "to or for the benefit of a creditor." Accordingly, the Trustee has established that there is no genuine issue of material fact with respect to the first element of the Preference Claim.

     *b.*    *The Trustee has established that there is no genuine issue of material fact with respect to the second element of the Preference Claim*

Section 547(b)(2) requires that the Transfers sought to be avoided by the Trustee must have been made "for or on account of an antecedent debt owed by the debtor before such transfer

---

[5] In the Answer, McKesson "denies for lack of knowledge whether the payments received by McKesson were from a bank account controlled and owned by [the Debtor]." [Adv. Doc. No. 11, p. 3, ¶ 16]. However, nowhere in McKesson's Response or McKesson's Motion does it point to any evidence in the summary judgment record indicating that the Transfers were not interests of the Debtor in property. *See In re Hardwood P-G, Inc.*, 2007 WL 1728653, at *2.

10

was made." "A debt is 'antecedent' for purposes of § 547(b) if it was incurred before the alleged

preferential transfer." *Baker Hughes Oilfield Operations, Inc. v. Cage (In re Ramba, Inc.)*, 416

F.3d 394, 399 (5th Cir. 2005). A payment that a debtor makes pursuant to the terms of a pre-

petition settlement agreement is made "for or on account of an antecedent debt" as provided in

§ 547(b)(2). *Peltz v. New Age Consulting Servs., Inc.*, 279 B.R. 99, 102 (Bankr. D. Del. 2002);

*see also Morton v. Commercial Loan Servs., Inc. (In re Henninger)*, 336 B.R. 733, 737–38

(Bankr. N.D. Tex. 2005) (holding that the payment, which was made pursuant to promissory

notes referred to in a settlement agreement resulting from a pre-petition lawsuit, was made on

account of an antecedent debt).

In the suit at bar, the Debtor, McKesson, and two of its principals, James R. Rutherford,

and Linda Rutherford, entered into the Settlement Agreement on February 2, 2010, fully and

finally resolving the State Court Lawsuit. [Adv. Doc. No. 21-1, pp. 6–10]. Because the

Transfers were made pursuant to the terms of the Settlement Agreement—a pre-petition

settlement agreement which refers to a promissory note [*Id.*; *see also* Adv. Doc. No. 1, ¶¶ 11 &

14; Adv. Doc. No. 11, ¶¶ 11 & 14]—the Court finds that the Transfers were made to McKesson

"for or on account of an antecedent debt" as provided in § 547(b)(2). Accordingly, the Trustee

has established that there is no genuine issue of material fact with respect to the second element

of the Preference Claim.

> c.     *The Trustee has established that there is no genuine issue of material fact*
> *with respect to the third element of the Preference Claim*

With respect to the third element, the Debtor is presumed to be insolvent on and during

the 90 days immediately preceding the Petition Date. *See* 11 U.S.C. § 547(f). The Fifth Circuit

has interpreted this presumption to mean that the creditor against whom the preference action is

brought must come "forward with evidence to rebut or meet the presumption." *Sandoz v. Fred*

*Wilson Drilling Co. (In re Emerald Oil Co.)*, 695 F.2d 833, 837–38 (5th Cir. 1983). In the absence of "evidence to meet or rebut the presumption," the trustee is entitled to rely upon the presumption of insolvency in his favor. *Id.*

Here, in McKesson's Response, McKesson has failed to produce any evidence to show that the Debtor was solvent at the time the Transfers were made.[6] Although McKesson cites two cases in the "Application Test" section in paragraph 14 of McKesson's Response—which discuss the method of determining the debtor's insolvency/solvency at the time of the alleged preferential transfers—the Court does not construe this paragraph as an attempt to rebut the presumption of insolvency because McKesson cites these cases to support its assertion that "post-petition events should *not* be considered." [Adv. Doc. No. 24, p. 7, ¶ 7]. Indeed, McKesson does not explicitly argue that the Debtor was solvent at the time of the Transfers nor does it attach exhibits or point to evidence to rebut the presumption.

Because McKesson has failed to come "forward with evidence to rebut or meet the presumption" of insolvency under § 547(f), the Trustee is not required to present evidence on the insolvency issue. *See, e.g., In re Jones*, 37 B.R. 969, 978 (Bankr. N.D. Tex. 1984) (noting that because of the presumption, it is not necessary for the party with the burden of proof to present evidence of the debtor's insolvency until the creditor comes forward with evidence of solvency); *Seidle v. Kwik Copy, Inc. (In re Belize Airways Ltd.)*, 18 B.R. 485, 489–90 (Bankr. S.D. Fla. 1982) (stating that the legislative history to § 547(f) "indicates that the presumption . . . is governed by the standards of Rule 301 of the Federal Rules of Evidence, which would leave the burden of proof on the issue of insolvency on the trustee but would not require him to present

---

[6] Although McKesson denies in the Answer that the Debtor was insolvent when the Transfers were made [Adv. Doc. No. 11, p. 3, ¶ 16], the mere denial in the Answer is insufficient to rebut the presumption of insolvency. *See Gasmark Ltd. Liquidating Trust v. Louis Dreyfus Natural Gas Corp.*, 158 F.3d 312, 315 (5th Cir. 1998) ("The party seeking to rebut the presumption must introduce some evidence to show that the debtor was solvent *at the time of the transfer*; mere speculative evidence of solvency is not enough.").

evidence on this issue unless the defendant creditor first comes forward with some evidence of the debtor's insolvency on the date in issue.").

Accordingly, the Court finds that the Trustee has met his burden of establishing that there is no genuine issue of material fact with respect to the third element of the Preference Claim because McKesson has failed to rebut the presumption contained in § 547(f) that the Debtor was insolvent on the dates of the Transfers (i.e., June 1, 2010, July 1, 2010, and August 3, 2010). *See In re Belize Airways Ltd.*, 18 B.R. 485, 489–90 (holding that the trustee met his burden of proof with respect to the insolvency element of the § 547(b) claim because the defendant "offered no evidence whatsoever" to rebut the § 547(f) presumption that the debtor was insolvent on the date of the transfer).

> *d.*    *The Trustee has established that there is no genuine issue of material fact with respect to the fourth element of the Preference Claim*

The fourth element of the Preference Claim—that the Transfers were made on or within 90 days before the Petition Date (i.e., August 3, 2010[7])—is undisputed. [Adv. Doc. No. 1, p. 4, ¶ 16; Adv. Doc. No. 11, p. 3, ¶ 16]. The Debtor's bank account statements reflect that the Debtor made payments to McKesson for the following amounts on the dates noted: (i) $43,341.10 on June 1, 2010; (ii) $13,806.55 on June 1, 2010; (iii) $42,911.46 on July 1, 2010; (iv) $13,669.73 on July 1, 2010; (v) $42,659.17 on August 3, 2010; and (vi) $13,589.36 on August 3, 2010—for a total of $169,997.37 paid to McKesson on or within 90 days prior to the Debtor filing its Chapter 11 petition. [Adv. Doc. No. 20-3].

---

[7] In the suit at bar, the ninety-day preference period commences with the date of filing of the Chapter 11 petition on August 3, 2010 and not with the date of conversion on January 21, 2011. *See* 11 U.S.C. § 348(a) ("Conversion of a case from a case under one chapter of this title to a case under another chapter of this title . . . does not effect a change in the date of the filing of the petition . . . ."); *Vogel v. Russell Transfer, Inc.*, 852 F.2d 797, 798 (4th Cir. 1988) (holding that the ninety-day preference period should be calculated from the date of filing of the Chapter 11 petition, rather than the date of conversion of the case to Chapter 7).

In sum, the summary judgment record establishes the first four elements of the Preference Claim.  There are no genuine issues of material fact with respect to these elements.

2. <u>The Trustee has Failed to Establish that There is No Genuine Issue of Material Fact with Respect to the Fifth Element of the Preference Claim</u>

It now remains for the Trustee to carry his burden on the fifth element of § 547(b)—whether McKesson actually received more than it would have received in a hypothetical Chapter 7 liquidation as a result of the Transfers. "This test is often referred to as the 'greater percentage test' or the 'improvement in position' test." *Unsecured Creditors Comm. v. Cmty. Bank (In re Stinson Petroleum Co.)*, 506 F. App'x 305, 309 (5th Cir. 2013).  Under this greater percentage test, the bankruptcy court is required to construct a hypothetical Chapter 7 liquidation <u>on the petition date</u> and "determine what the creditor would have received had the transfers not taken place." *Id.* (citing *Lowe v. Palmetco Inc. (In re N.A. Flash Found. Inc.)*, 298 F. App'x 355, 359 (5th Cir. 2008)); *see also Neuger v. United States (In re Tenna Corp.)*, 801 F.2d 819, 822 (6th Cir. 1986) (holding that the greater percentage test should be calculated using a hypothetical liquidation on the date the bankruptcy petition was filed, not on the date the adversary proceeding was commenced).  There is no question that the parties know what McKesson actually received: the Transfers total $169,997.37.  Accordingly, the issue now is what amount would McKesson hypothetically receive in a Chapter 7 if the Transfers had not been made.

a. *There is a genuine issue of material fact as to whether McKesson is a fully secured creditor, an undersecured creditor, or a completely unsecured creditor*

To determine whether McKesson received more as a result of the Transfers than it would receive in a hypothetical Chapter 7 liquidation where the Transfers had not occurred, this Court first must "consider how the debt would have been treated in a Chapter 7 liquidation." *Braniff Airways, Inc. v. Exxon Co., U.S.A.*, 814 F.2d 1030, 1034 (5th Cir. 1987).  Here, McKesson's

status as the Debtor's creditor is the focus of the inquiry because "a **fully secured** creditor who receives a prepetition payment does not receive a greater percentage than he would have in a bankruptcy proceeding because as a fully secured creditor he would have recovered 100% payment in a bankruptcy proceeding." *Krasfur v. Scurlock Permian Corp. (In re El Paso Refinery, L.P.)*, 171 F.3d 249, 254 (5th Cir. 1999) (emphasis added). Therefore, "payments to a fully secured creditor are not preferential because the creditor does not receive more than he would in a Chapter 7 liquidation." *Braniff Airways, Inc.*, 814 F.2d at 1034 (citing *Mason & Dixon Lines, Inc. v. St. Johnsbury Trucking Co. (In re Mason & Dixon Lines, Inc.)* 65 B.R. 973, 977 (Bankr. M.D.N.C. 1986)) (internal quotations marks omitted).

For an **undersecured creditor**—as opposed to a fully secured creditor—the Fifth Circuit has set forth that two issues must be resolved <u>before</u> determining whether the undersecured creditor received a greater percentage than would have occurred under Chapter 7: (1) To what claim the payment is applied? (i.e., the Application Aspect); and (2) From what source the payment comes? (i.e., the Source Aspect). *In re El Paso Refinery, L.P.*, 171 F.3d at 254. Under the Application Aspect, an undersecured creditor does not receive a greater percentage recovery if the creditor applies the payment to the secured portion of the debt, thereby releasing a portion of its collateral from its security interest. *Id.* Under the Source Aspect, even if the payment was applied to the unsecured portion of the creditor's claim, the creditor does not receive a greater percentage recovery if the source of the payment is from the creditor's own collateral. *See id.* at 255.

In the dispute at bar, the Trustee asserts that four creditors with claims of at least $9,919,776.09 held senior, perfected security interests against substantially all of the Debtor's assets, including its accounts receivables. [Adv. Doc. No. 20, p. 9, ¶ 34]. The Trustee therefore

15

argues that McKesson was a completely unsecured creditor on the Petition Date because Patriot Bank, the Debtor's senior secured lender, will itself not be paid in full, and "there is no possibility that the Debtor's accounts receivables were worth more than $9,919,776.09 as of the Petition Date."[8]  [Adv. Doc. No. 20, p. 10–11, ¶¶ 36 & 37].  McKesson, on the other hand, argues that it was a fully secured creditor because the Debtor "had assets that far exceeded what the Debtor owed senior-secured lenders at all relevant times." [Adv. Doc. No. 24, p. 3, ¶ 6]. McKesson further asserts that even if it is an undersecured creditor—as opposed to a fully secured creditor—it did not receive a greater percentage recovery because it applied the Transfers to the secured portion of its claim and the source of the Transfers came from its own collateral. [*Id.*, p. 7, ¶ 15].  These contentions demonstrate a genuine issue of material fact as to whether McKesson is a fully secured creditor, an undersecured creditor, or a completely unsecured creditor; and if McKesson is an undersecured creditor,  the Trustee is required to satisfy the Application Aspect and Source Aspect required by the Fifth Circuit before the issue of greater percentage recovery can be decided. *See In re El Paso Refinery, L.P.*, 171 F.3d at 254.[9] Therefore, the Court finds that, with respect to the fifth element of the Preference Claim, the Trustee has failed to meet his burden of demonstrating that there is no genuine issue of material fact.

> b.   *The implicit requirement of § 547(b)(5)—diminution of the estate*

Although diminution of the Debtor's estate is not an explicit statutory requirement in § 547(b)(5), some courts, including the Fifth Circuit, have held that the requirement is implicit in

---

[8] Although the Trustee argues that McKesson was a completely unsecured creditor on Petition Date, he fails to address the Application Aspect and the Source Aspect in the Trustee's Motion.  *In re El Paso Refinery, L.P.*, 171 F.3d at 254 ("Both aspects must be examined before the issue of greater percentage recovery can be decided.").

[9] If, at trial, the Trustee proves that McKesson is a completely unsecured creditor—as opposed to an undersecured creditor—then the Trustee is not required to address the Application Aspect and Source Aspect.

the statutory language. 5 *Collier on Bankruptcy*, ¶ 547.03[7] at 547-43 (16th ed. 2013); *see also In re N.A. Flash Found. Inc.*, 298 F. App'x 355, 359 (5th Cir. 2008) ("[T]he alleged preferential transfer must not diminish or deplete the debtor's estate."); *Garner v. Knoll, Inc. (In re Tusa-Expo-Holdings, Inc.)*, 496 B.R. 388, 405 (Bankr. N.D. Tex. 2013) ("There is no statutory requirement that there be a diminution of the bankruptcy estate. However, such a requirement is implicit in the language of the [Bankruptcy Act section 60(b), predecessor of Code section 547].") (citing *Palmer v. Radio Corp. of Am.*, 453F.2d 1133, 1135 n.3 (5th Cir. 1971));

In the suit at bar, McKesson argues that the Debtor's estate was not diminished because the Transfers were not made at the expense of general unsecured creditors. [Adv. Doc. No. 24, p. 11, ¶ 24]. In support of this position, McKesson cites the opinion in *In re Superior Stamp & Coin Co.*, 223 F.3d 1004 (9th Cir. 2000). [Adv. Doc. No. 21, p. 14, ¶ 27]. Specifically, the Ninth Circuit held that: "A transfer of an interest of the debtor in property occurs where the transfer diminishes directly or indirectly the funds to which creditors of the same class can legally resort for the payment of their debts, **to such an extent that it is impossible for other creditors of the same class to obtain as great a percentage as the favored one**." *In re Superior Stamp & Coin Co.*, 223 F.3d at 1007 (emphasis added). Here, assuming that McKesson is a completely unsecured creditor, McKesson argues that the Trustee's Motion contains no evidence that the Transfers, if they had not been made, would have been available for distribution to general unsecured creditors.

The Trustee strongly disagrees with McKesson's argument. The Trustee contends that there is no "legal requirement that a preference payment must reduce the distribution to general unsecured creditors," and asserts that the implicit requirement articulated by the Fifth Circuit merely requires that the Transfers be out of "property of the estate." [Adv. Doc. No. 23, p. 10–

17

11, ¶ 26]. The Trustee, for example, notes that if the Transfers represented monies that the Debtor was holding in trust for McKesson, then the Transfers would not come from "property of the estate" because property held in trust does not constitute "property of the estate." [Adv. Doc. No. 23, pp. 10-11, ¶ 26; *In re Southmark Corp.*, 49 F.3d 1111, 1118 (5th Cir. 1995)].

The Court agrees with the Trustee's argument. McKesson's argument does indeed appear to be supported by the Ninth Circuit. This Court, however, is not bound by Ninth Circuit precedent, and the Court does not find *Superior Stamp* persuasive. *See Harper v. Bowen,* 813 F.2d 737, 742 (5th Cir. 1987) ("[W]e are not bound by other circuit courts' decisions . . . ."); *Webber v. Tamez,* No. 4:10–CV–511–Y, 2011 U.S. Dist. LEXIS 27399, at *6 (N.D. Tex. Feb. 22, 2011) ("This court is not bound by other circuit case law that holds otherwise."). Indeed, if one accepts this view, the results are totally at odds with the Code. For example, assume that McKesson is in a class of general unsecured creditors and that in a hypothetical chapter 7, the unsecureds would receive nothing and that the only claimants who would receive a distribution are priority claims, (for example, the holder of a domestic support obligation), who are to receive less than 100% of their claims. Under the Ninth Circuit's view, the implicit requirement would not be satisfied because a return of the Transfers would <u>not</u> result in a distribution to unsecureds; the proceeds would be paid to priority claimants. Yet, according to the Ninth Circuit, McKesson would keep the Transfers because no other unsecured creditors would receive a dime. Such result is contrary to the distribution scheme provided by § 726.

By way of another example, assume that McKesson is in a class of subordinated unsecured creditors and that in a hypothetical chapter 7, the general unsecured creditors would receive a percentage of their claims, but the subordinated unsecured creditors would receive nothing. Under the Ninth Circuit's view, the implicit requirement would not be met because a

return of the Transfers would <u>not</u> result in a distribution to subordinated unsecured creditors. Thus, once again, McKesson would keep the Transfers even though no other members of its class (i.e., subordinated unsecured creditors) would receive a dime. And, once again, such a result would violate the distribution scheme of § 726.

In sum, this Court concludes that the implicit requirement under § 547(b)(5) requires only that the Trustee prove that the Transfers diminished the estate.[10]

3. <u>Because The Trustee has Failed to Establish that There is No Genuine Issue Of Material Fact with Respect to the Fifth Element of the Preference Claim, the Court Denies the Trustee's Motion as to the § 550 Claim</u>

Section 550(a) authorizes the Trustee to recover the Transfers for the benefit of the estate to the extent that the Transfers have been avoided under section 547. 11 U.S.C. § 550(a). The Trustee has satisfied the first four elements of § 547(b), but he has not established the fifth element nor has he shown that there was a diminution of the estate as a result of the Transfers. And, because the Trustee has not yet established that the Transfers are avoidable under § 547(b), the Court must deny the Trustee's Motion as to the Recovery Claim. *See, e.g., Henderson v. Comty. Bank (In re Stinson Petroleum Co. Inc.)*, Bankr. No. 09–51663–NPO, Adv. No. 09–05094–NPO, 2011 WL 4344190, at *6 (Bankr. S.D. Miss. Sept. 14, 2011) ("The Trustee must establish the basic elements of a preference before he may recover the Wire Transfers under 11 U.S.C. § 550."), *aff'd sub nom. Hendersen v. Cmty. Bank*, Civil Action No. 2:11–CV–243–KS–MTP, 2012 WL 956193 (S.D. Miss. Mar. 20, 2012), *aff'd sub nom. Unsecured Creditors Comm. v. Cmty. Bank (In re Stinson Petroleum Co.)*, 506 F. App'x 305 (5th Cir. 2013); *Dye v. Sachs (In*

---

[10] In fact, no preferential transfers come from "property the estate" because no estate is created until a bankruptcy petition is filed, whereas preferential transfers solely occur **prior to** the filing of a bankruptcy petition. This observation notwithstanding, many courts, including the Fifth Circuit, have held that to satisfy the implicit requirement of the fifth element, the plaintiff must show that the preferential transfers "diminished the estate." *See, e.g., In re N.A. Flash Found. Inc.*, 298 F. App'x 355, 359 (5th Cir. 2008). The more precise way of articulating this requirement would be to say that the plaintiff must show that the property which was transferred would have become "property of the estate" upon the filing of the bankruptcy petition if no transfer had ever occurred.

*re Flashcom, Inc.)*, 361 B.R. 519, 525 (Bankr. C.D. Cal. 2007) (holding that the Respondents have a constitutional right to defend the § 547(b) claim asserted against them before they can be deprived of the value of the property transferred under § 550(a)).

    4.   The Trustee has Established that There is No Evidence to Support McKesson's Affirmative Defense of Ordinary Course of Business under 11 U.S.C. § 547(c)(2)

Even if the Trustee satisfies all of the elements of § 547(b), the Transfers may not be avoided if the Transfers were made in payment of a debt incurred by the Debtor "in the ordinary course of business or financial affairs" of the Debtor and McKesson. 11 U.S.C. § 547(c)(2). McKesson, as the recipient of the Transfers, has the burden of proving, by a preponderance of evidence, the "ordinary course of business" defense.[11]  Because McKesson, as the non-moving party, bears the ultimate burden of proving the "ordinary course of business" defense at trial, the Trustee, as the movant, must show the absence of sufficient evidence to support McKesson's defense. *See In re Gulf Fleet Holdings, Inc.*, Bankr. No. 10-50713, 2013 WL 3230433, at *2 (Bankr. W.D. La. June 25, 2013); *In re Blake*, 401 B.R. 839, 843 (Bankr. S.D. Tex. 2009).

In the Trustee's Motion, the Trustee argues that the Transfers are not subject to the ordinary course of business defense because the Transfers were made pursuant to the Settlement Agreement. [Adv. Doc. No. 20, pp. 11–12, ¶ 39].  The Court finds that the Trustee has demonstrated an absence of evidence to support McKesson's "ordinary course of business" defense because it is undisputed that the Transfers were made pursuant to the Settlement Agreement. [Adv. Doc. No. 1, p. 3, ¶ 14; Adv. Doc. No. 11, p. 2, ¶ 14].  Several courts have held that payments "made in connection with settlement of litigation do not fall within the 'ordinary course of business' defense of section 547(c)(2)." *Am. Honda Fin. Corp. v. A. Angelle,*

---

[11] *See* 11 U.S.C. § 547(g) ("[T]he creditor or party in interest against whom recovery or avoidance is sought has the burden of proving the nonavoidability of a transfer under subsection (c) of this section."); *Caillouet v. First Bank & Trust (In re Entringer Bakeries, Inc.)*, 548 F.3d 344, 351 (5th Cir. 2008).

*Inc. (In re A. Angelle, Inc.)*, 230 B.R. 287, 299 (Bankr. W.D. La. 1998) (holding that a payment by the debtor to a creditor made pursuant to a pre-petition settlement agreement was not protected by the provisions of section 547(c)(2)), *modified*, 230 B.R. 306 (Bankr. W.D. La. 1998); *see also Ogle v. Advent, Inc. (In re Rotary Sales, LLC)*, Bankr. No. 11-38053, 2013 WL 1316750, at *5 (Bankr. S.D. Tex. Apr. 1, 2013) ("Payments made [pursuant to an agreed judgment] are certainly not made according to ordinary business terms . . . . 'For example, filing a lawsuit to enforce a debt may not be unusual when a debtor does not pay, but payments according to a settlement agreement are not according to ordinary business terms.'") (citing *Clark v. Balcor Real Estate Fin. (In re Merideth Hoffman Partners*, 12 F.3d 1549, 1553 (10th Cir. 1993).

Because the Trustee has shown that there is no evidence to support McKesson's ordinary course of business defense, McKesson, as the non-moving party, "must come forward with 'substantial' evidence showing a genuine dispute of material fact with respect to each essential element" of the defense. *See In re Gulf Fleet Holdings, Inc.*, 2013 WL 3230433, at *2. This, McKesson has failed to do. Indeed, McKesson asserted the "ordinary course of business" defense pursuant to § 547(c)(2) in the Answer [Adv. Doc. No. 11, p. 4, ¶ 4]; however, McKesson neither addresses the defense in McKesson's Response nor in McKesson's Motion. *See* [Adv. Doc. Nos. 21 & 24]. Therefore, the Court finds that the Trustee's Motion must be granted as to McKesson's "ordinary course of business" defense under § 547(c)(2).

5. <u>Summary of Genuine Issues of Material Fact That Need to be Adjudicated with Respect to the Trustee's Motion</u>

In conclusion, this Court grants in part and denies in part the Trustee's Motion. The Court concludes that there is no genuine issue of material fact with respect to the first four elements the Preference Claim. However, the Trustee has failed to establish that there is no

genuine issue of material fact as to the fifth element of the Preference Claim. Specifically, there are genuine issues of material fact as to: (i) whether McKesson was a fully secured creditor, an undersecured creditor, or a completely unsecured creditor; (ii) whether the Transfers enabled McKesson to receive more than it would in Chapter 7 if the Transfers had not been made; and (iii) whether there was a diminution of the Debtor's estate as a result of the Transfers—i.e., whether the Transfers would have become "property of the estate" on the Petition Date if the Transfers had not ever occurred.

Because the Trustee has not yet established that the Transfers are avoidable under § 547(b), the Court denies the Trustee's Motion as to the Recovery Claim. Accordingly, this Court cannot grant summary judgment to the Trustee on the Preference Claim. Finally, because the Trustee has established that there is no evidence to support McKesson's "ordinary business course" defense under § 547(c)(2), the Court grants the Trustee's Motion as to this defense.

**D.    McKesson's Motion**

The Court's denial of the Trustee's Motion as to the Preference Claim by no means requires the grant of McKesson's Motion. *See Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) ("Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.").

Because McKesson does not bear the ultimate burden of proof at trial,[12] in order to obtain summary judgment, McKesson must show the absence of sufficient evidence to support an essential element of the Preference Claim. *See In re Gulf Fleet Holdings, Inc.*, Bankr. No. 10-50713, 2013 WL 3230433, at *2 (Bankr. W.D. La. June 25, 2013); *In re Blake*, 401 B.R. 839, 843 (Bankr. S.D. Tex. 2009). If McKesson shows that there is no evidence to support the

---

[12] Rather, the Trustee has bears the ultimate burden of proof at trial on the Preference Claim. *See* 11 U.S.C. § 547(g).

Preference Claim, the Trustee "must come forward with 'substantial' evidence showing a genuine dispute of material fact with respect to each essential element" of the Preference Claim. *See In re Gulf Fleet Holdings, Inc.*, 2013 WL 3230433, at *2.

In McKesson's Motion, McKesson argues that there is no evidence to support the fifth element of the Preference Claim—11 U.S.C. § 547(b)(5)[13]—for three reasons. [*See* Adv. Doc. No. 21, p. 9, ¶ 15]. First, McKesson asserts that it was a fully secured creditor at the time it received the Transfers because the Debtor "had assets that far exceeded what the Debtor owed senior-secured lenders at all relevant times. [*Id.* at ¶¶ 2, 12 & 17]. Second, McKesson argues that if it was not a fully secured creditor, it was at least an undersecured creditor; and that the Trustee cannot satisfy his burden on either the Application Aspect or the Source Aspect as required by *In re El Paso Refinery, L.P.*, 171 F.3d 249, 254–55 (5th Cir. 1999). [*Id.* at p. 10, ¶ 16]. Third, McKesson argues that the Debtor's estate was not diminished as a result of McKesson's receipt of the Transfers.[14] [*Id.* at 14, ¶ 28].

As evidence, McKesson points to several documents suggesting that it was a fully secured creditor, and that the "Debtor's assets far exceeded the Senior-Secured Claims at all relevant times." [*Id.* at 6–8, ¶ 12]. McKesson's evidence is as follows:

---

[13] Although McKesson denied the first and second elements of the Preference Claim in the Answer [*See* Adv. Doc. No. 11, p. 3, ¶ 16], nowhere in McKesson's Motion does it take the position that there is an absence of sufficient evidence to support these two elements. Further, with respect to the third element, the Trustee is entitled to rely upon the presumption of the Debtor's insolvency because McKesson has failed to "come forward with evidence to rebut or meet the presumption" of insolvency under § 547(f). *See Sandoz v. Fred Wilson Drilling Co. (In re Emerald Oil Co.)*, 695 F.2d 833, 838 (5th Cir. 1983). Finally, McKesson admitted the fourth element of the Preference Claim—that it received the Transfers on or within 90 days before the Petition Date. [Adv. Doc. No. 11, p. 3, ¶ 16]. Therefore, the Court now construes McKesson's Motion to seek summary judgment based on the alleged absence of evidence to support only the fifth element of the Preference Claim.

[14] To reiterate, McKesson's argument relies upon the Ninth Circuit's holding in *In re Superior Stamp & Coin Co.*, 223 F.3d 1004 (9th Cir. 2000), which this Court, for the reasons set forth above, rejects.

(1) the Debtor's Accounts Receivable report, printed on March 3, 2010, which counsel for McKesson obtained from Patriot Bank [*See* Adv. Doc. No. 21, p. 6; Adv. Doc. No. 21-2, pp. 4, 7–75; Adv. Doc. Nos. 21-3 & 21-4];

(2) the Debtor's unaudited balance sheets, dated March 31, 2010 and June 31, 2010, which counsel for McKesson also obtained from Patriot Bank [*See* Adv. Doc. No. 21, p. 6; Adv. Doc. No. 21-2, p. 4, ¶ 8; Adv. Doc. No. 21-5];

(3) a Collateral Review Report on the Debtor prepared for Patriot Bank by Statesman Business Advisors on September 13, 2010 [*See* Adv. Doc. No. 21, p. 7; Adv. Doc. No. 21-2, p. 4, ¶ 10; Adv. Doc. No. 21-7];

(4) the Debtor's Monthly Operating Report Summaries—one signed on September 19, 2010 by James Rutherford, and the two other summaries signed by the Trustee on February 23, 2011 and June 9, 2011 [*See* Adv. Doc. No. 21, p. 6-7; Main Case Doc. Nos. 106, 390 & 435];

(5) the Trustee's representation made in the Emergency Application for Authority to Employ Med-Provider Solutions, Inc. as Collection Agent Pursuant to 11 U.S.C. § 328(a), which was files on January 25, 2011 [Adv. Doc. No. 21, p. 7; Main Case Doc. No. 355, p. 2, ¶ 4];

(6) the Debtor's "Opportunity" Collections Summary, which McKesson's counsel received from the Trustee, "showing additional collection opportunities as of October 2, 2011 [*See* Adv. Doc. No. 21, p. 6; Adv. Doc. No. 21-2, p. 4, ¶ 9; Adv. Doc. No. 21-6];

(7) the Trustee's representation in the Trustee's Motion that "[f]ollowing the Conversion Date, the Trustee collected $1,366,623.69 in accounts receivable" through Med-

Provider Solutions [Adv. Doc. No. 21, p. 8; Adv. Doc No. 20, p. 8, ¶ 25; Adv. Doc. No. 20-1, p. 3, ¶ 17];

(8) facts contained in the Motion for Reconsideration and Modification of Order, which was filed by Robert D. Green & Associates, P.C. and Clark, Burnett, Love & Lee, G.P.—which was filed on February 9, 2011 and withdrawn on February 18, 2011— relating to the collection efforts by the two law firms [Adv. Doc. No. 21, p. 8; Main Case Doc. Nos. 369 & 381]; and

(9) a report prepared by Miles D. Harper III of Gainer, Donnelly & Desroches, LLP, which  counsel for McKesson obtained from the Trustee. [*See* Adv. Doc. No. 21, p. 8–9, ¶ 13; Adv. Doc. No. 21-2, p. 4, ¶ 11; Adv. Doc. No. 21-8].

Most of these documents relate to dates **other than the Petition Date**.  Yet, the fifth element of the Preference Claim—§ 547(b)(5)—is to be analyzed **as of the Petition Date**.[15]  The two documents that do relate to the Petition Date are the Debtor's original Schedules, which were filed on August 18, 2010, and the Debtor's Amended Schedules which were filed on September 20, 2010.  Both of these sets of Schedules set forth assets and liabilities as of the Petition Date.  Yet, for purposes of summary judgment evidence, McKesson may not rely solely on these Schedules as evidence of the value of the Debtor's assets.  *See Faulkner v. Kornman (In re Heritage Org., L.L.C.)*, 2008 Bankr. LEXIS 3230, at *37 (Bankr. N.D. Tex. Dec. 12, 2008) ("While a court may look to a debtor's schedules as [summary judgment] evidence, without other

---

[15] *See Palmer Clay Prods. Co. v. Brown*, 297 U.S. 227, 229 (1936) ("Whether a creditor has received a preference is to be determined, not by what the situation would have been if the debtor's assets had been liquidated and distributed among his creditors at the time the alleged preferential payment was made, but by the actual effect of the payment as determined when bankruptcy results."); *see also In re Tenna Corp.*, 801 F.2d 819, 822 (6th Cir. 1986) (holding that the greater percentage test should be calculated using a hypothetical liquidation on the date the bankruptcy petition was filed); *In re U.S.  Ins. Group, LLC*, 451 B.R. 437, 443 (Bankr. E.D. Tenn. 2011) ("Whether or not a particular payment permits a creditor to receive more than it would in a chapter 7 liquidation is determined as of the petition date.").

evidence explaining the source of the values assigned to the debtor's assets in the schedules --

*i.e.,* book value versus fair market value, the scheduled value is not necessarily consistent with

the Bankruptcy Code's "fair valuation" requirement."); *see also W.L. Mead, Inc. v. Cent. States*

*Pension Fund (In re W.L. Mead, Inc.),* 70 B.R. 651, 655–56 (Bankr. N.D. Ohio 1986) (finding

that the debtor's schedules were insufficient to defeat summary judgment on the presumption of

insolvency where "the magnitude of the discrepancy between the scheduled values and the actual

sales prices strongly suggests that any inference which could be drawn from the schedules is not

worthy of serious consideration").

The Court, having reviewed McKesson's Motion, the Trustee's Response, and the

exhibits attached thereto, is not persuaded that McKesson has met its burden of establishing the

absence of evidence to support the fifth element of the Trustee's Preference Claim.[16]  To the

contrary, the Court concludes that there are genuine issues of material fact relating to the fifth

element of the Preference Claim: (i) whether McKesson was a fully secured creditor, an

undersecured creditor, or a completely unsecured creditor; (ii) whether the Transfers enabled

McKesson to receive more than it would in Chapter 7 if the Transfers had not been made; and

(iii) whether there was a diminution of the Debtor's estate as a result of the Transfers—i.e.,

whether the Transfers would have become "property of the estate" on the Petition Date if the

Transfers had not occurred.  Accordingly, McKesson is not entitled to summary judgment based

upon its contention that the Trustee cannot establish the fifth element of the Preference Claim;

and the Court finds that McKesson's Motion should be denied in its entirety.

---

[16] In the Trustee's Response, the Trustee objects to several of the documents attached to McKesson's Motion on the grounds that the documents are inadmissible. [*See* Adv. Doc. No. 23].  For purposes of ruling on McKesson's Motion, the Court assumes that all of these documents are admissible.  The Court emphasizes that this assumption is solely for purposes of ruling on McKesson's Motion.  At trial, if McKesson seeks to introduce any or all of these documents into the record, and the Trustee objects, then this Court will issue an evidentiary ruling at that time.

## IV. CONCLUSION

For the reasons set forth above, the Court finds that the Trustee has met his burden of establishing that there is an absence of sufficient evidence to support McKesson's "ordinary business course" defense under § 547(b)(2). Accordingly, the Court grants the Trustee's Motion as to McKesson's "ordinary business course" defense.

The Court also finds that the Trustee has satisfied his burden and that there is no genuine issue of material fact with respect to the first four elements of the Preference Claim—11 U.S.C. §§ 547(b)(1), (2), (3) and (4).[17] However, as to the fifth element of the Preference Claim, there are genuine issues of material fact as to: (i) whether McKesson was a fully secured creditor, an undersecured creditor, or a completely unsecured creditor; (ii) whether the Transfers enabled McKesson to receive more than it would in Chapter 7 if the Transfers had not been made[18]; and (iii) whether there was a diminution of the Debtor's estate as a result of the Transfers—i.e., whether the Transfers would have become "property of the estate" on the Petition Date if the Transfers had not occurred. Because the Trustee has not established that there is no genuine issue of material fact with respect to each element of the Preference Claim[19], this Court denies the Trustee's Motion as to the Preference Claim under § 547(b) and finds that trial will be necessary to determine the three issues referenced immediately above. Further, because the Trustee has not established that Transfers are avoidable under § 547(b), the Court denies the

---

[17] *See* Fed. R. Civ. P. 56(g) ("If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact . . . that is not genuinely in dispute and treating the fact as established in the case.).

[18] There has been no evidence offered which demonstrates the difference between what the McKesson received as a result of the Transfers and what it would have been received in a Chapter 7 had the Transfers not been made. Such evidence is mandatory if the Trustee is to prevail in an action under § 547(b).

[19] *See In re Gulf Fleet Holdings, Inc.*, Bankr. No. 10-50713, 2013 WL 3230433, at *2 (Bankr. W.D. La. June 25, 2013) (holding that "the Trustee must establish that there is no genuine dispute of material fact with respect to **each element** of his preference claim" to prevail on summary judgment) (emphasis added).

Trustee's Motion as to the Recovery Claim under § 550(a). *See Dye v. Sachs (In re Flashcom, Inc.)*, 361 B.R. 519, 525 (Bankr. C.D. Cal. 2007).

In sum, the Court concludes that the Trustee's Motion should be denied as to the Preference Claim and the Recovery Claim, and that the Trustee's Motion should be granted as to McKesson's "ordinary course of business" defense.    Further, the Court concludes that McKesson's Motion should be denied in its entirety.    An order granting in part and denying in part the Trustee's Motion, and denying McKesson's Motion in its entirety, will be entered simultaneously on the docket with the entry of this Memorandum Opinion.

Signed:   November 25, 2013

Jeff Bohm
Chief United States Bankruptcy Judge

28